**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**ERIK H. CARTER**
Cordell & Cordell, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DAWN E. WELLMAN**
**JAY F. BRUBAKER**
Allen Wellman McNew, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD E. WROBLEWSKI, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 33A01-1204-DR-170 |
| | ) | |
| LINDA M. (WROBLEWSKI) CAIN, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Richard T. Payne, Judge
Cause No. 33C01-0802-DR-10

April 1, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Edward E. Wroblewski appeals from the trial court's findings of fact, conclusions thereon, and judgment issued in favor of Linda M. (Wroblewski) Cain resolving various petitions and motions related to the post-secondary educational component of the parties' child support obligations. Edward presents several issues, which we consolidate and restate as the following issue: Is the trial court's order finding that Edward failed to meet his burden of proving a substantial change in income justifying a modification of the parties' percentages of contribution toward post-secondary college expenses clearly erroneous?

We affirm.

On February 8, 2008, Edward filed a petition for dissolution of his marriage to Linda. While the dissolution petition was pending, on March 20, 2008, the parties submitted, and the trial court approved that same day, an agreed entry setting out provisional maintenance payments from Edward to Linda. On April 7, 2008, however, Edward filed a "Motion to Modify Provisional Order". Many hearings were held regarding Edward's petitions to modify the provisional orders and Linda's petitions alleging that Edward had failed to comply with those orders.

On September 3, 2009, the trial court entered findings of fact, conclusions thereon, and the decree of dissolution. Two children were born of the marriage, T.W., born on January 30, 1990 and K.W., born on June 14, 1992. The requirement of the decree of dissolution that is the subject of this appeal is the educational support order entered to provide for the payment of T.W.'s and K.W.'s post-secondary education. That provision reads as follows:

After application of any and all grants and/or scholarships, received by either child, Husband [Ed] shall pay 95% and Wife [Linda] shall pay 5% of post-secondary and education expenses, including tuition, fees, books, supplies, extracurricular activities, technology fees and other necessary costs of the children's education.

*Appellant's Appendix* at 48.

On October 2, 2009, Edward filed a motion to correct error and subsequently filed a Motion to Modify Decree of Dissolution with Respect to Support and College Expenses for Older Child on October 21, 2009. The trial court denied Edward's motion to correct error on November 6, 2009, and Edward filed a notice of appeal on November 25, 2009. While the appeal was pending, Edward and Linda participated in mediation and on March 12, 2010, they submitted, and the trial court approved, an agreed entry, denominated as a Mediated Agreement Modifying Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage. The pending appeal was voluntarily dismissed on April 1, 2010.

On March 18, 2010, however, Edward filed a Notice of Bankruptcy Relief with the trial court. Edward subsequently filed another Petition for Modification of the Decree of Dissolution of Marriage. A hearing was held on this petition on December 30, 2010, and the trial court entered its ruling on that petition on January 12, 2011.

On June 20, 2011, Edward filed another Petition for Modification of Decree of Dissolution of Marriage requesting the trial court to modify both the amount of his child support obligation and his percentage of the post-secondary educational support. The trial court held hearings on these matters on December 8, 2011 and February 2, 2011. Edward

appeals from the trial court's findings of fact, conclusions thereon, and judgment entered on April 5, 2012.

Our Supreme Court has stated the following about our standard of review of a modification order and the deference given to trial courts in family law matters:

> Whether the standard of review is phrased as "abuse of discretion" or "clear error," this deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship to their children-the kind of qualities that appellate courts would be in a difficult position to assess. Secondly, appeals that change the results below are especially disruptive in the family law setting. And third, the particularly high degree of discretion afforded trial courts in the family law setting is likely also attributable in part to the "fluid" standards for deciding issues in family law cases that prevailed for many years.
>
> The third of these reasons has largely fallen by the wayside as the Legislature and [the Supreme] Court have promulgated a series of statutes, rules, and guidelines—standards that bring consistency and predictability to the many family law decisions. But, the importance of first-person observation and avoiding disruption remain compelling reasons for deference.
>
> We recognize of course that trial courts must exercise judgment, particularly as to credibility of witness, and we defer to that judgment because the trial court views the evidence firsthand and we review a cold documentary record. Thus, to the extent credibility or inferences are to be drawn, we give the trial court's conclusions substantial weight. But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.

*MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940-41 (Ind. 2005) (internal citations and footnote omitted).

Here, Edward contends that the trial court committed reversible error by failing to characterize Linda's inheritance as a substantial change in circumstances warranting a modification of the parties' post-secondary college expense obligations.

4

When considering a request to modify child support, the trial court must determine whether there has been a change in circumstances so substantial and continuing as to make the existing terms unreasonable. IC 31-16-8-1; *see also* Ind. Child Support Guideline 4 ("The provisions of a child support order may be modified only if there is a substantial and continuing change of circumstances."). The petitioning party bears the burden of proving the necessary change of circumstances to justify modification. Upon appellate review of a child support modification order, the judgment of the trial court will not be reversed unless it is clearly erroneous. Under this standard, we will reverse a support order only if the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court. We do not weigh the evidence or judge the credibility of the witnesses but, rather, consider only that evidence most favorable to the judgment, together with the reasonable inferences that can be drawn therefrom.

*Gardner v. Yrttima*, 743 N.E.2d 353, 355 (Ind. Ct. App. 2001). We further held that "an inheritance should be considered in determining gross income for purposes of the Indiana Child Support Guidelines." *Id*.

In *Gardner*, we also discussed situations in which a trial court may choose to deviate from the Guidelines when considering how to characterize a party's inheritance. We stated the following:

The nature of an inheritance suggests that it may be the type of income that justifies such a deviation. It is not periodic, regular, or dependable. It may not be in the nature of cash or readily convertible to cash. Its receipt may provide direct and indirect benefits to the child. Thus, while the trial court should consider an inheritance in determining gross income, the ultimate effect of the receipt of an inheritance on the determination of child support lies within the sound discretion of the trial court. In one case, the inheritance may in and of itself constitute a change in circumstances sufficient to justify a modification of a prior support order. In another, it may have no effect on the child support determination.

Further, if the court excludes an inheritance from gross income, it may nevertheless consider the inheritance in determining child support. It is well-established that Indiana courts have the authority to consider the financial circumstances and net worth of the parents in addition to their income when

5

calculating child support. An inheritance may change a non-custodial parent's ability to pay child support. For instance, an inheritance may be used to reduce a non-custodial parent's debt, thereby increasing the parent's overall standard of living.

The nature and use of the inheritance should also be considered in determining child support. Where an inheritance is in the form of cash or securities and is placed in income-generating assets, the interest, dividends, or other income from such assets should be included in gross income for purposes of determining child support. Where a parent opts to place some or all of an inheritance in non-income producing assets, the court may consider whether it is appropriate to impute income to the parent. Not all such choices should support such imputation. It may be appropriate and equitable and in the best interests of the child for a parent who inherits a family heirloom to retain that heirloom without affecting the child support obligation.

In summary, our reading of the Guidelines and the authorities addressing the issue of whether an inheritance is income for purposes of calculating child support leads us to the following conclusions: First, for purposes of modification an inheritance may amount to a substantial and continuing change in circumstances sufficient to trigger a modification of a child support order. Second, the principal amount of the inheritance should be considered by the trial court in determining gross income for purposes of calculating child support. Third, the court may exclude the inheritance from its determination of gross income where sound reasons exist. Fourth, the effect of the inheritance on the financial circumstances and net worth of the parent may be considered in determining whether the court should deviate from the Guidelines in determining child support. Fifth, the interest, dividends, or other return on the investment of the inheritance is income. Finally, if a parent places the inheritance in non-income producing assets, a trial court may also consider the inheritance in determining whether income should be imputed to the parent for purposes of child support.

*Id.* at 358-59.

We begin our examination of the trial court's order that is the subject of this appeal by setting forth the trial court's findings of fact and conclusions thereon from the 2009 Dissolution Decree, and the evolution of its terms via subsequent modification. The trial

6

court's order, in pertinent part with respect to the parties' financial circumstances, stated the following:

FINDINGS OF FACT

. . . .

5. [Linda] is 50 years old and has not worked in a full-time capacity since 1989 and consequently has not had the opportunity to build a career. Her last position, outside of the home business, was in 1999-2000. She currently works as a tutor at the University of Indianapolis 15 hours per week and earns $12.00 per hour.

6. [Edward] has, prior to and during the entirety of the marriage, been gainfully employed. He has worked as a Medical/Health Physicist-Radiation Safety Officer with St. Vincent's Hospital and Health Services, Indianapolis since May 2001 and has 26 years of diversified experience in radiology/nuclear medicine. [Edward's] paystub, ending March 7, 2009, shows a year-to-date gross income of $35,117.01 (or $3511.71 per week). [Edward] also began, in approximately March 2001, a sole-proprietorship, Photon Measurements Plus ("PMP").

7. In 2001, [Edward] began a sole proprietorship, Photon Measurements Plus ("PMP"). PMP is a profitable business, showing increased earning over the last few years. According to the parties' joint income tax returns, PMP's net income was $78,000.00 in 2006 and $72,000.00 in 2007. The parties have not yet filed a 2008 income tax return. In his Discovery Responses to [Linda], [Edward] reported that in 2008, PMP would, if averages carried out through the end of the year, net $101,297.04 or $1,948.02 per week.

8. [Edward's] average weekly income in 2009 is $5,104.01, using a three (3) year average for PMP and deducting $18.60 per week of self-employment tax based on the most recent tax return (2007).

9. During the marriage, [Linda] sacrificed the opportunity to a) stay current in any profession; b) maintain steady employment and seniority; c) increase her ability to earn income and build her work experience; and d) continue to build retirement and contribute to social security. [Linda's] employment opportunities have been limited by the fact that she has not worked full-time for 19-20 years and is competing with applicants who have current experience,

7

training and education. She has specifically found that holding a Master's degree with no work experience creates a serious impediment to employment.

10. Moreover, since March 2007, [Linda] has suffered from chronic low back pain and numbness and pain in her right leg. [Linda] underwent physical therapy approximately once each week and performed lumbar stabilization and core strengthening exercises at home. She has undergone epidural injections in an attempt to alleviate or reduce the pain, but this has been unsuccessful. [Linda] is unable to tolerate prolonged standing, sitting and walking and unable to lift or bend. She has been diagnosed with Herniated Disk Lumbosacral, Right S1 Radiculopathy Secondary to a large disc herniation at L5-S1, Degenerated Disk Disease and low back pain. She was assigned a 5% whole person impairment rating in 2008.

On March 16, 2009, [Linda] underwent Right S1 selective nerve root injection or operative microdiscectomy. On March 18, 2009, [Linda] was seen for a follow-up with her surgeon and was unable to walk and could not perform her normal activities of daily living. On April 7, 2009, [Linda] underwent an Operative Microdiscectomy. [Linda] is currently taking Hydrocodone for pain. Her long-term prognosis is unknown.

[Linda] believes that the best chance of securing a means to support herself, given her lack of work experience and while also accommodating her physical impairment, lies in pursuing training through education.

. . . .

24. At the final hearing, [Linda] testified that she received no child support from [Edward] during the pendency of this matter. [Linda] did not request a retroactive order of child support for [Edward] to pay because [Edward] assisted in supporting her and the children through his maintenance payments while the divorce was pending.

25. Both parties submitted Indiana Child Support Obligation Worksheets and supporting documentation. [Linda's] Worksheet indicated that [Edward's] income per week is $5,204.01 and her income per week in $262.00. [Linda] provided [Edward] a credit for health insurance in the amount of $11.54. Wife's Worksheet results in [Edward] owing a weekly child support obligation of $508.39. [Linda] did not provide [Edward] with any credit for parenting time, explaining he has not had any parenting time overnights since he filed his Verified Petition for Dissolution of Marriage. The Court adopts [Linda's] proposed Child Support Obligation Worksheet.

26. [Linda] requested that [Edward] pay 95% and [Linda] pay 5% of any and all tuition, fees, books, supplies, extracurricular activities, technology fees or other necessary costs for the children's education, after application of any and all grants and/or scholarships received by either child. [Linda] feels that ongoing earnings of the parties and the children will be sufficient for funding college.

27. [Linda] presented substantial evidence at trial concerning her efforts to find employment during the pendency of this cause. Additionally, [Linda] presented a summary of facts she believed support this Court ordering rehabilitative maintenance, including COBRA costs, monthly living expenses, and the cost for her to obtain her Doctorate in clinical psychology.

28. Considering her monthly living expenses (including health care through COBRA and her education costs) [Linda] requests that [Edward] be ordered to pay her $3,000.00 per month, for 36 months.

29. The Court has considered the educational level of each spouse at the time of the marriage and at the time the divorce action was commenced, as well as the current earning capacity of each spouse, and the time and expenses necessary for [Linda] to acquire sufficient training to enable her to resume appropriate employment.

30. The Court also finds that [Linda] lacks sufficient property to provide for her needs, and that her physical medical problems impede her from being gainfully employed at this time.

. . . .

CONCLUSIONS OF LAW AND ORDERS

. . . .

8. In determining that [Linda] has rebutted the presumptive equal division, the Court has considered all provisions under I.C. § 31-15-17-2. As to Section (2), the extent to which the property was acquired by each spouse (A) before the marriage; or (B) through inheritance or gift, the Court notes that there is no significant inheritance or gift per se.

Under Section (3), the Court considers the economic circumstances of each spouse at the time the disposition of the property is to become effective,

9

including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

The Court notes that the facts and conclusions pertinent to this section are that [Linda] shall have physical custody of the parties' two children to remain in the marital residence. The parties do not have any significant liquid assets, despite the substantial net value of the marital assets. [Linda] is only recently employed, part-time and will be enrolled full-time in pursuit of her Master's and Doctorate. Thus, [Linda] would face substantial tax consequences by liquidating any IRA. In contrast, [Edward] has been able to save significant sums of money and purchase a residence. Without a division to [Linda] in excess of 50%, in accordance with he proposed Marital Estate Summary, [Linda's] economic circumstances appear bleak at best.

The Court was not presented with any evidence applicable to Section (4) concerning the conduct of the parties during the marriage as related to the disposition or dissipation of their property.

Finally, under Section (5), this Court considers the earnings or earning ability of the parties related to: (A) a final division of property; and (B) a final determination of the property rights of the parties. The current earnings are disparate between [Edward] and [Linda] as previously stated herein.

. . . .

10. [Edward] shall pay spousal maintenance to [Linda] in the amount of $3,000.00 per month, beginning on the first day of the month following the date of this Order, for a period of thirty six (36) months.
. . . .

17. Based upon the findings and the parenting time order set forth above, the Court does now set [Edward's] Child support obligation at $508.00 per week, beginning the first Friday after the Court issues its Decree per the child support worksheet attached hereto as Exhibit "A". The parties shall follow the 6% rule as set forth in Exhibit "A", and all "uninsured medical" shall include all uninsured medical, prescription, dental, optical and counseling expenses for the minor children. [Edward] shall continue to maintain the health insurance for the minor children currently in place. After the 6% threshold is met, uninsured expenses shall be divided between the parties with [Edward] responsible for 95% and [Linda] 5% for those expenses.

18.  After application of any and all grants and/or scholarships, received by either child, [Edward] shall pay 95% and [Linda] shall pay 5% of post-secondary and educational expenses, including tuition, fees, books, supplies, extracurricular activities, technology fees and other necessary costs for the children's education.  Both parties shall reimburse [T.W.] for expenses he has paid.  [Edward] shall reimburse him $2,106.72 and [Linda] shall reimburse him $172.98.

19.  As security for [Edward's] child support obligation, he shall maintain a life insurance policy on his life in the amount of $250,000.00 with [Linda] as beneficiary for the benefit of the minor children.  [Edward] shall not borrow against or in any way encumber said policy.  Further, he shall provide [Linda] written proof annually that said policy is in full force and effect, and confirming that [Linda] is beneficiary.

20.  The Court now Orders [Edward] to pay [Linda] the amount of $1,910.79 within thirty (30) days, for those obligations that he was required to pay under the terms of the Agreed Entry of March 20, 2008.  Interest shall accrue at a rate of 8% per annum for any unpaid balance still owed as of thirty-one (31) days after the date of this Order.

. . . . .

*Appellant's Appendix* at 20-49.

In the March 11, 2010 Mediated Agreement Modifying Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage, which was approved by the trial court, Edward was required to reimburse T.W. for past-due college expenses, and to reimburse Linda for his 95% portion of T.W.'s 2009-10 tuition expenses.  Other issues regarding unpaid college expenses and the provision of billing statements, class schedules, and grade reports to Edward were resolved, but the percentage of the post-secondary educational support obligations remained intact.  The original decree was modified to provide that Edward would pay the sum of $50,000.00 to Linda within 5 days of the entry of the order, and $36,000.00 within 60 days of the order, and monthly payments of $1,500.00 per month

11

for 12 months plus 5 percent interest, in lieu of the remaining rehabilitative maintenance payments of $3,000.00 per month. Those payments were explicitly characterized as property settlement and not alimony/maintenance payments. The agreement also specified additional penalties, interest, and collections costs if Edward did not meet his financial obligations. An additional lump-sum payment of $12,900.00 due 1 year from the date of the mediation agreement was a term included in the mediation agreement.

Edward failed to make the payments, and pursued relief in bankruptcy court seeking to reduce the amount he owed Linda from $104,000.00 to $30,330.65, as reflected in his initial plan proposed in bankruptcy court. Ultimately, the trial court entered the order that is at the heart of this appeal. The pertinent language from that order follows:

### FINDINGS OF FACT

. . . .

5. On March 16, 2010, [Edward] filed a Voluntary Petition in Bankruptcy under Chapter 13, of the United States Code.

6. On June 7, 2011, [Edward] filed a Modification of Decree of Dissolution of Marriage requesting a modification of the parties' pro rata obligation of the children's post-secondary education expenses and child support obligation.

7. On August 9, 2011, [Edward] filed a Motion to Clarify Court's Order to determine the percentage of credit he should receive for post-secondary education expenses when a child withdraws from a class after the cut-off date for refunds.

8. On November 28, 2011, [Linda] filed a Petition for Rule to Show Cause alleging [Edward] had failed to pay [Linda] for his portion of the college textbooks and expenses for the fall 2011 term.

12

9. On December 19, 2011, [Edward] filed a Petition for Rule to Show Cause alleging [Linda] and [T.W.] had failed to provide [Edward] with a complete and non-redacted schedule of courses for the spring 2012 term.

. . . .

12. After [Edward] filed bankruptcy, [Linda] hired the firm of Hostetler and Kowalik, P.C. to represent her interests in the bankruptcy proceedings and enforce payment of [Edward's] financial obligations contained in the Mediated Agreement.

. . . .

29. The parties agreed in open court to a modification of child support to $146.00 per week due to the changed circumstance of both children being enrolled in college and living on campus during the school terms.

30. Neither party's employment has changed nor their employment income since the last modification of support ruling in January 2011.

31. [Linda] has a Masters in Business Administration and a teaching license that is expired and recently earned a certificate in supply chain management.

32. [Linda] is considering enrolling in an additional class in finance to improve the marketability of her degree.

33. [Linda] has produced a spreadsheet labeled Respondent's Exhibit 3 that outlined all the positions she has applied for since March, 2010.

34. [Linda] remains under the care of a doctor for her back problems and there has been no improvement or significant change in her physical health or abilities.

35. [Linda] pays monthly living expenses including electric, propane, phone, cable, internet bundled services, health insurance premiums, car insurance and health expenses.

36. [Linda] has used money received from her father's estate to pay for her educational and healthcare expenses because she had not received her property settlement payments from [Edward] as provided in the Mediated Agreement. Additionally, she has paid approximately $9400.00 in educational expenses for herself.

37.  [Linda] has presented an outline of the expenses she has paid from inherited money for herself and her children for education and healthcare labeled Respondent's Exhibit 5.

38.  [Linda] received a one-half interest in a coin collection, real estate and a Jaguar from her father's estate.  Although the Jaguar is listed for sale with a classic car dealer, it has not sold.

39.  The real estate in the estate includes seventy-six (76) acres, of which about half is tillable, that has been listed for sale.  It produces approximately $6000.00 per year in farm rental income for the estate.

. . . .

41.  [Linda] has been billed $11,600, as shown in Respondent's Exhibit 1, in attorney's fees from Hostetler & Kowalik, P.C. to represent her interests in the bankruptcy proceedings to ensure payment of the property settlement payments owed to her from the Mediated Agreement.

42.  The Mediated Agreement, Paragraph 7, provides that [Linda] is entitled to recover the costs of collection or attorney's fees "in the event [Edward] fails to timely satisfy the lump sum payments and/or the monthly payments as they become due".

. . . .

CONCLUSIONS OF LAW

. . . .

2.  [Edward] has the burden of proof on the issue of contempt by [Linda] with regard to provision of non-redacted copies of textbook and fee receipts, class schedules and grade statements.  Since it is impossible to determine which of the parties is telling the truth concerning those issues, [Edward] has not met his burden of proof with regard to his Petition for Rule to Show Cause filed December 19, 2011.

2.[sic]  [Edward] willfully failed to pay the sums due [Linda] with regard to textbooks and class fees for the fall semester of 2011 and is in contempt.  He shall purge himself of contempt by paying [Linda] the sum of $1341.02 within 10 days.

14

3. The issue of a credit or reimbursement to [Edward] for the cost of [T.W.] withdrawing for a class after the refund deadline had passed was withdrawn by [Edward] during the hearing. No credit or refund will be provided to either party if a child withdraws from a class and no credit or refund is given by the University.

. . . .

5. If they are able to complete the application without either parent's W-2 information, [T.W.] and [K.W.] will apply for financial aid through the completion of a FAFSA.

. . . .

7. The parties agree that a substantial change in circumstances has occurred due to both children attending college and living on campus.

8. Pursuant to the agreement of the parties, [Edward] will pay [Linda] child support in the amount of $146.00 a week effective the date of this Court Order.

9. [Edward] has failed to discharge his burden of proof that a change in change in[sic] [Edward's] and/or [Linda's] income since the last Court Order justified a modification of the parties' percentage share of college expenses.

10. Although inheritance can be included as income, the ultimate effect of the receipt of the inheritance on the determination of child support falls within the discretion of the trial court.

11. [Linda's] inheritance is excluded from determining her weekly income for child support purposes due to the following sound reasons:

    a) The inheritance has not constituted a substantial change in her circumstances as the majority of the inheritance remains in non-liquidated assets;

    b) The inheritance has not changed her financial circumstances as she continues to remain employed and there has [not] been any change in her monthly living expenses;

    c) [Linda] has used part of her inheritance to pay for her educational and healthcare expenses since she had not received her property settlement payments as outlined in the Mediated Agreement;

15

d) Due to [Linda's] physical health, her ability to financially support herself in the future is uncertain; and

e) There is no evidence of [Linda] receiving any income through interest, dividends, or other return on investments.

12. [Edward] shall continue to pay 95% and [Linda] to pay 5% of all post-secondary and educational expenses including tuition, fees, books, supplies, extracurricular activities, technology fees and other necessary costs for the children's education.

13. [Edward] is to pay [Linda's] bankruptcy attorney's fees because they were incurred in an attempt to collect her property settlement payments as outlined in the Mediated Agreement. [Edward] shall reimburse [Linda] the sum of $11,600 within thirty (30) days.

. . . .

*Appellant's Appendix* at 20-26.

Ind. Code Ann. § 31-16-8-1 (West, Westlaw current through 2012 2nd Reg. Sess.) provides in pertinent part that provisions of an order with respect to child support may be modified only upon a showing of changed circumstances "so substantial and continuing as to make the terms unreasonable . . . ." Provisions allowing for the payment of educational expenses are also subject to modification because they too are in the nature of child support. *Schacht v. Schacht*, 892 N.E.2d 1271 (Ind. Ct. App. 2008). An award of post-secondary educational expenses and the amount of such an award is left to the trial court's discretion. *Id*.

Here, the trial court acknowledged Linda's inheritance, but noted that the inheritance had not resulted in changed circumstances such that modification of the percentages allotted to the parties was necessary. The trial court's findings and conclusions in this regard are supported by the evidence. Edward testified that he was currently earning approximately

16

$4,900.00, which is slightly reduced from the $5,104.01 weekly average in 2009. Linda's financial circumstances had remained unchanged and any liquidated assets received in the inheritance were used to pay educational and health expenses, all the while not receiving property settlement payments from Edward. The trial court did not abuse its discretion by finding no change in the percentages provided in parties' respective post-secondary educational obligations.

We likewise reject Edward's argument that the trial court abused its discretion by failing to consider requiring T.W. and K.W. to contribute non-reimbursable financial aid to assist in paying the expenses of their post-secondary education. The trial court explicitly ordered the children to complete applications for financial aid if it could be accomplished without either parent's W-2 information.

In addition, we reject Edward's argument that the trial court abused its discretion or that its judgment was clearly erroneous by considering Linda's physical health in excluding her inheritance as income. Edward argued that there was no evidence in the record to support that finding and conclusion. This argument, however, improperly shifts the burden of proof to Linda. Edward, as the proponent of the petition to modify based in large part upon the inheritance, was required to show changed conditions warranting a modification. Assuming for the sake of argument, however, that the trial court's consideration was unsupported by the record, the trial court's thorough and detailed findings identify other sound reasons for excluding Linda's inheritance.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.